IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERILE PAHAGAS and EDITH MATEO MENDOZA,<br><br>     Plaintiffs,<br><br>     v.<br><br>PIT KOEHLER a/k/a PIT KOHLER and MAREIKE KOEHLER a/k/a MAREIKE KOHLER,<br><br>     Defendants. | **COMPLAINT**<br>**17 cv 4898** |

## PRELIMINARY STATEMENT

1. Plaintiffs Sherile Pahagas and Edith Mateo Mendoza were lured to the United States with promises of good work and steady pay. Recruited and then employed by German civil servant Pit Koehler and his wife Mareike Koehler, Ms. Pahagas worked for defendants from November 2012 to October 2014, and Ms. Mendoza worked from January 2015 to June 2016. Both Ms. Pahagas and Ms. Mendoza were presented with contracts by Defendant Pit Koehler promising around $10 per hour for between 35 to 40 hours of work per week. Their contracts also promised that they would receive overtime pay for any hours worked over forty per week. However, Ms. Pahagas and Ms. Mendoza arrived to the defendants' large, six-bedroom home in Westchester County to face a completely different reality: forced to work between approximately ninety to one hundred hours per week, Ms. Pahagas and Ms. Mendoza earned close to just $4 per hour and received no overtime or spread-of-hours compensation. The overwhelming demands of their work, which included a grueling schedule caring for four children, cooking meals, cleaning the home, and even shoveling the snow, endangered their health and well-being. Accordingly,

plaintiffs bring claims for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and seek compensatory and liquidated damages as well as interest, attorneys' fees, and the costs of this action.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over plaintiffs' federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337.

3. In addition, the Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because those claims arise out of the same common nucleus of operative fact as the federal claim.

4. Plaintiffs' state law claims are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because all of the acts which give rise to plaintiffs' claims occurred in West Harrison, Westchester County, New York, in this District.

## THE PARTIES

6. Plaintiff Sherile Pahagas is an adult individual who currently resides in Queens, NY.

7. Plaintiff Sherile Pahagas was employed by defendants as a domestic worker from approximately November 2012 to October 2014.

8. Plaintiff Edith Mateo Mendoza is an adult individual who currently resides in Queens, NY.

9. Plaintiff Edith Mateo Mendoza was employed by defendants as a domestic worker from approximately January 2015 to June 2016.

10. At all times relevant to this action, plaintiffs were "employees" of defendants as defined in NYLL § 190(2) and 12 NYCRR § 142-2.14.

11. Defendant Pit Koehler resides at 16 Stonewall Circle, West Harrison, NY 10604.

12. Defendant Mareike Koehler resides at 16 Stonewall Circle, West Harrison, NY 10604.

13. Defendants Pit and Mareike Koehler are husband and wife, and have four children who, upon information and belief, are currently thirteen, eleven, nine, and three years old.

14. At all relevant times, Defendants Pit and Mareike Koehler were plaintiffs' employers within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 2(6), 190(3) and 651(6).

## STATEMENT OF FACTS

### *Plaintiff Sherile Pahagas*

15. Defendants contacted Plaintiff Pahagas in October 2012 through a website "greataupair.com," where Ms. Pahagas had listed her services as a domestic worker, and asked to interview her for a position as a domestic worker in their home in Westchester County, New York.

16. At the time defendants contacted her, Plaintiff Pahagas was working as a domestic worker in Hong Kong.

17. Plaintiff Pahagas interviewed with defendants through a video call and thereafter defendants offered her employment and agreed to sponsor her for a visa to enter the United States.

18. Defendant Pit Koehler and Plaintiff Sherile Pahagas entered into a contract "for domestic staff" on October 21, 2012.

19. The employment contract between Defendant Pit Koehler and Sherile Pahagas stated that she would earn a salary of $9.86/hr based on a 35-hr week, plus room and meals.  It further stated she would earn 1.5 times her hourly rate for any hours over the 40-hour limit in a week.  It stated that her hours of work would be Monday through Friday, 8:30 am to 4pm, and a Saturday morning shift, which would be included in the 40-hour week.

20. Ms. Pahagas arrived in the U.S. on approximately November 3, 2012, and began working in defendants' home at 16 Stonewall Circle, West Harrison, NY 10604 on or about November 6 or 7, 2012.

21. Ms. Pahagas resided with defendants during the tenure of her employment from approximately November 6 or 7, 2012 until October 25, 2014.

22. When Ms. Pahagas began working for defendants, her work schedule was Monday through Friday, from approximately 6 am to 11 pm and Saturdays, from approximately 8am to 1 am, totaling around 102 hours a week.  Sunday was her day off and she could leave the residence.

23. Defendants did not permit Ms. Pahagas any breaks during her working hours.

24. Ms. Pahagas' principal duties included:  daily deep cleaning of the six-bedroom, six-bathroom house and 2-car garage, vacuuming, laundry, dusting, ironing, grocery shopping, cooking and preparing daily meals/snacks for the family as well as occasional meals for guests and visitors, chauffeuring members of the Koehler family, caring for the defendants' children, all of whom were under ten years of age, as well as shoveling snow and scrubbing the outdoor fence, and various other tasks defendants requested of her.

25. Throughout the entire tenure of her employment, defendants paid Ms. Pahagas around $345 per week, which they transferred directly to her bank account.

26. In August 2013, Ms. Pahagas complained to defendants that they were not following the contract and were required to pay her more. Defendants responded to Ms. Pahagas' complaint by claiming that they could not afford to increase her pay.

27. In October 2013, Ms. Pahagas complained to defendants about the extensive hours she worked, and defendants agreed to change her schedule the following week. Thereafter, her work schedule was Monday through Thursday, from approximately 6 am to 11 pm, Fridays from approximately 6am to 1 am, and Saturday from approximately 8am to 1pm, totaling around 92 hours a week. Sunday was her day off and she could leave the residence.

28. In October 2014, Ms. Pahagas approached Defendant Mareike Koehler about the overwhelming number of hours and expressed concern about how it was negatively affecting her health. Defendant Mareike Koehler responded in anger.

29. Later in October 2014, because Ms. Pahagas was pregnant and was concerned that as her pregnancy advanced she would no longer be able to withstand the taxing physical demands of the work and hours with defendants, she quit her position.

30. Although Ms. Pahagas worked well in excess of forty (40) hours per week during the tenure her employment, defendants never paid her any overtime compensation.

31. Although Ms. Pahagas worked for more than ten hours a day, between five to six days a week, defendants never paid her any spread-of-hours compensation.

32. Defendants did not provide Ms. Pahagas weekly wage stubs or statements containing information required by NYLL § 195(3), including information such as dates of work, rates of pay for regular and overtime hours, and number of regular hours and overtime hours worked.

### *Plaintiff Edith Mateo Mendoza*

33. Defendants contacted Plaintiff Mendoza in in the summer of 2014 also through "greataupair.com," where Ms. Mendoza had listed her services as a domestic worker, and asked to interview her for a position as domestic worker in their home in Westchester County, New York.

34. At the time defendants contacted her, Ms. Mendoza was working as a domestic worker in Qatar.

35. Ms. Mendoza interviewed with defendants through a telephone call and thereafter defendants offered her employment and agreed to sponsor her for a visa to enter the United States.

36. Defendant Pit Koehler and Ms. Mendoza entered into a contract "for domestic staff" on November 5, 2014.

37. The employment contract between Defendant Pit Koehler and Ms. Mendoza stated that Ms. Mendoza would earn a salary of $10.02/hr based on a 35-hr week, plus room and meals. It further stated she would earn 1.5 times her hourly rate for any hours over the 40-hour limit in a week. It stated that her hours of work would be Monday through Friday, between 7am and 9 pm for a total of 35 to 40 hours a week, and a Saturday morning shift, which would be included in the 40-hour week.

38. Ms. Mendoza arrived in the U.S. on January 12, 2015 and began working in defendants' home at 16 Stonewall Circle, West Harrison, NY 10604 on or about January 13, 2015.

39. Ms. Mendoza resided with defendants during the tenure of her employment from approximately January 12, 2015 until June 5, 2016.

40. When Ms. Mendoza began working for defendants, her work schedule was Monday through Thursday from approximately 6:30 am to 10:30 pm, Fridays 6:30am to 12:30 am and Saturdays from approximately 7:30am to 4pm, totaling around 90.5 hours a week.

41. Defendants did not permit Ms. Mendoza any breaks during her working hours.

42. Ms. Mendoza's principal duties included daily deep cleaning of the six-bedroom, six-bathroom home and 2-car garage, vacuuming, laundry, dusting, ironing, occasional grocery shopping, cooking and preparing daily meals/snacks for the family as well as occasional meals for guests and visitors, caring for the defendants' four children, all of whom were under ten years of age, as well as shoveling snow and scrubbing the outdoor fence, cleaning after defendants' pet birds and various other tasks defendants requested of her.

43. Throughout the entire tenure of her employment, defendants paid Ms. Mendoza $350.70 per week, which they transferred directly to her bank account.

44. In early December 2015, Ms. Mendoza asked for a day off from work to see a doctor because she was very ill, but defendants told her she had to wait until they left for vacation, which was not until the end of the month.

45. In January 2016, Ms. Mendoza was still very ill, but Defendants refused to give her a day off to see the doctor and she was unable find a doctor available to see her on Sundays, which was her regular day of rest. Defendants finally gave Ms. Mendoza one day off from work on her birthday January 12, 2016.

46. In February 2016, Ms. Mendoza's illness continued to worsen, and she took six days off to see a doctor and recuperate. When she returned to work, defendants were very upset and told Ms. Mendoza her leave was unreasonable.

47. Ms. Mendoza's sickness persisted, and in May 2016, she visited a doctor twice. On the second occasion, Defendant Pit Koehler threatened to fire Ms. Mendoza if she ever missed work again.

48. In June 2016, Ms. Mendoza decided to visit the doctor and consequently defendants fired her.

49. Although Ms. Mendoza worked well in excess of forty (40) hours per week during the tenure her employment, defendants never paid her any overtime compensation.

50. Although Ms. Mendoza worked for more than ten hours a day, five days a week, defendants never paid her any spread-of-hours compensation.

51. Defendants did not provide Ms. Mendoza weekly wage stubs or statements containing information required by NYLL § 195(3), including information such as dates of work, rates of pay for regular and overtime hours, and number of regular hours and overtime hours worked.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*For Failure to Pay the Minimum Wage Under the Fair Labor Standards Act*

52. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

53. At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the FLSA, 29 U.S.C. § 203.

54. At all times relevant to this action, Defendants Pit Koehler and Mareike Koehler were plaintiffs' employers within the meaning of the FLSA, 29 U.S.C. § 203.

55. Pursuant to 29 U.S.C. §206(a)(1) of the FLSA, defendants were required to pay plaintiffs the legal minimum wage for work performed during the relevant period.

56. Defendants knowingly failed to pay plaintiffs the applicable legally mandated minimum wage, in violation of the FLSA, 29 U.S.C. § 206(a)(1).

57. Defendants knew or should have known that the practices described above were unlawful.  Defendants failed to make a good faith effort to comply with federal wage and hour laws.

58.  Because defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 225.

59. As a result of the foregoing, plaintiffs have been deprived of compensation at the minimum wage in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
*For Failure to Pay the Minimum Wage Under the New York Labor Law*

60. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

61. At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the NYLL §§ 2, 190, and 651.

62. At all times relevant to this action, defendants were plaintiffs' employers within the meaning of the NYLL §§ 2, 190, and 651.

63. Under the NYLL § 652, defendants are required to compensate plaintiffs at the legal minimum wage.

64. Defendants willfully failed to pay plaintiffs the legal minimum wage, in violation of the NYLL§ 652 and its accompanying regulations, including 12 N.Y.C.R.R. § 142-2.1.

65. Defendants' failure to pay plaintiffs the minimum wage was willful and intentional.

66. Due to defendants' NYLL violations, plaintiffs are entitled to recover from defendants the unpaid minimum wages, an additional amount as liquidated damages equal to 100 percent of all unpaid wages, plus costs, all reasonable attorneys' fees, and pre-judgment interest. NYLL § 663.

### THIRD CAUSE OF ACTION
*For Failure to Pay Overtime Wages Under the New York Labor Law*

67. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

68. At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the NYLL §§ 2, 190, and 651.

69. At all times relevant to this action, defendants were plaintiffs' employers within the meaning of the NYLL §§ 2, 190, and 651.

70. Under the NYLL, defendants are required to compensate plaintiffs at a rate of one and one-half times her regular rate of pay for each hour worked in excess of forty-four hours per week.  12 N.Y.C.R.R § 142-2.2.

71. Defendants willfully failed to pay plaintiffs overtime wages at a rate of one and one-half times her regular rate of pay for each hour worked in excess of forty-four hours per week, in violation of the NYLL and its accompanying regulations, including 12 N.Y.C.R.R. § 142-2.2.

72. Defendants' failure to pay plaintiffs overtime wages was willful and intentional.

73. Due to defendants' NYLL violations, plaintiffs are entitled to recover from defendants her unpaid overtime wages, an additional amount as liquidated damages equal to 100 percent of all unpaid overtime wages, plus costs, all reasonable attorneys' fees, and pre-judgment interest.  NYLL § 663.

## **FOURTH CAUSE OF ACTION**
*For Failure to Pay Spread-of-Hours Compensation under the New York Labor Law*

74. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

75. At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the NYLL §§ 2, 190, and 651.

76. At all times relevant to this action, defendants were plaintiffs' employers within the meaning of the NYLL §§ 2, 190, and 651.

77. Under the NYLL, defendants are required to compensate plaintiffs an extra hour's pay for every day they worked in which the interval between their start and end time exceeded ten hours.  12 N.Y.C.R.R § 142-2.4.

78. Defendants willfully failed to pay plaintiffs an extra hour's pay for every day they worked in which the interval between their start and end time exceeded ten hours, in violation of the NYLL and its accompanying regulations, including 12 N.Y.C.R.R. § 142-2.4.

79. Defendants' failure to pay plaintiffs spread-of-hours compensation was willful and intentional.

80. Due to defendants' NYLL violations, plaintiffs are entitled to recover from defendants her unpaid spread-of-hours compensation, an additional amount as liquidated damages equal to 100 percent of all unpaid spread-of-hours compensation, plus costs, all reasonable attorneys' fees, and pre-judgment interest.  NYLL § 663.

## **FIFTH CAUSE OF ACTION**
*For Failure to Pay the Promised Wage Under the New York Labor Law*

81. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

82. At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the NYLL §§ 2, 190, and 651.

83. At all times relevant to this action, defendants were plaintiffs' employers within the meaning of the NYLL §§ 2, 190, and 651.

84. Under the NYLL §§ 190, 191, *et.seq.*, defendants are required to pay manual laborers each week, and to pay the promised wage for every hour worked.

85. Defendants failed to pay plaintiffs the promised wage, $9.86 per hour for Plaintiff Pahagas and $10.02 per hour for Plaintiff Mendoza, and the corresponding overtime rates of $14.79 per hour for Plaintiff Pahagas and $ 15.03 per hour for Plaintiff Mendoza, for all hours worked over forty-four in a workweek.

86. Defendants' failure to pay plaintiffs promised wages was willful and intentional.

87. Due to defendants' NYLL violations, plaintiffs are entitled to recover from defendants the unpaid promised wages, an additional amount as liquidated damages equal to 100 percent of all unpaid promised wages, plus costs, all reasonable attorneys' fees, and pre-judgment interest. NYLL § 663.

### SIXTH CAUSE OF ACTION
*For Failure to Provide Wage Statements Under the New York Labor Law*

88. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

89. At all times relevant to this action, plaintiffs were employed by defendants within the meaning of the NYLL §§ 2, 190, and 651.

90. At all times relevant to this action, defendants were plaintiffs' employers within the meaning of the NYLL §§ 2, 190, and 651.

91. Under the NYLL, defendants were required to provide to plaintiffs a statement with every payment of wages setting forth, *inter alia*, (i) the dates of work covered by that payment of wages, (ii) the regular hourly rate of pay, (iii) the overtime rate of pay, (iv) the number of regular hours worked, and (v) the number of overtime hours worked. NYLL § 195(3); 12 N.Y.C.R.R. § 142-2.7.

92. Defendants failed to provide plaintiffs with any such statements, in violation of the NYLL.

93. Due to defendants' NYLL violations, plaintiffs are entitled to recover damages from defendants, together with costs and reasonable attorneys' fees and any other relief that the Court may deem necessary or appropriate. NYLL § 198(1-d).

### FIFTH CAUSE OF ACTION
*Breach of Contract*

94. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

95. Plaintiff Pahagas entered into a written contract for employment with Defendant Pit Koehler, whereby Defendant Pit Koehler agreed to pay Plaintiff Pahagas $9.86 per hour for all hours up to forty in a week and $14.79 for any hours over the 40-hour limit, among other promises.

96. Plaintiff Mendoza entered into a written contract for employment with Defendant Pitt Koehler, whereby Defendant Pit Koehler agreed to pay Plaintiff Mendoza $10.02 per hour for all hours up to forty in a week and $15.03 for any hours over the 40-hour limit, among other promises.

97. Defendant Pit Koehler breached the written contracts with both plaintiffs.

98. As a direct result of the defendants' breach of their contract, plaintiffs have been damaged in an amount to be determined at trial.

### **REQUEST FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that a judgment be granted as follows:

(a) Declaring defendants' conduct complained of herein to be in violation of plaintiffs' rights under the FLSA and NYLL;

(b) Awarding plaintiffs unpaid minimum wages due under the FLSA and NYLL;

(c) Awarding plaintiffs overtime wages due under the NYLL;

(d) Awarding plaintiffs spread-of hours compensation due under NYLL

(e) Awarding plaintiffs promised wages due under NYLL;

(f) Awarding plaintiffs damages for failure to provide wage statements, in violation of the NYLL;

(g) Awarding plaintiffs damages for breach of contract;

(h) Awarding plaintiffs liquidated damages;

(i) Awarding plaintiffs pre-judgment and post-judgment interest;

(j) Awarding plaintiffs the costs of this action, together with reasonable attorneys' fees; and

(k) Awarding such other relief as this Court deems just and proper.

Dated:   New York, New York
         June 28, 2017

                                            Respectfully submitted,

                                            URBAN JUSTICE CENTER

                                            By:   */s/ Reena Arora*

        Reena Arora
        S. Tito Sinha
        Community Development Project
        Urban Justice Center
        123 William Street, 16th Floor
        New York, NY 10038
        (646) 459-3020
        (212) 533-4598 (fax)
        rarora@urbanjustice.org

        *Attorneys for plaintiffs*